# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| United States of America | ) | | FILED |
|---|---|---|---|
| v. | ) | | Jul 25, 2022 |
| | ) | Case No. | CLERK, U.S. DISTRICT COURT |
| | ) | | EASTERN DISTRICT OF CALIFORNIA |
| RAYKHEEM ANDREW GUTHERY | ) | | **SEALED** |
| | ) | | 2:22-mj-0112 KJN |
| | ) | | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 9, 2022__ in the county of __Solano__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 922(g)(1)** | **Felon in possession of Ammunition** |

This criminal complaint is based on these facts:

See Affidavit of FBI Task Force Officer Dalton Ryken, attached hereto and incorporated by reference.

☒ Continued on the attached sheet.

/s/

*Complainant's signature*

Task Force Officer Dalton Ryken, FBI
*Printed name and title*

Sworn to me and signed via telephone.

Date: __07/25/22__ at 1:55 p.m.

*Judge's signature*

City and state: __Sacramento, CA__   Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Dalton C. Ryken, a detective with the Solano County Sherriff's Office, being duly sworn, state:

1. I am submitting this affidavit in support of my request for the issuance of a criminal complaint and arrest warrant against Raykheem GUTHERY. for violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. The facts establishing probable cause that GUTHERY committed this crime are set forth more fully below.

I. **INTRODUCTION AND AGENT BACKGROUND**

2. I am currently employed by the Solano County Sheriff's Office and have been since September of 2014. I am currently assigned as a Detective (Task Force Officer) with the FBI Solano County Violent Crime Task Force (SCVCTF) being dually sworn on November 22, 2021.

3. My responsibilities include investigations pertaining to violent offenders and/or violent organizations. These investigations frequently involve the possession and possession for sale of controlled substances and firearms.

4. I have attended a six-month basic police officer academy at the Napa Valley Police Academy in Napa, California. This training included over 20 hours of specialized training in controlled substances which also included, but was not limited to, controlled substance identification, packaging, distribution, influence, and characteristics of use. I have arrested or assisted with the arrest of persons for possession of cocaine, cocaine base, crystal methamphetamine, marijuana, heroin and ecstasy. I have contacted no less than 800 people who have been arrested possession of controlled substance(s), possession for sale of controlled substances, and/or firearms possession.

5. I have been deemed an expert in possession of methamphetamine for sale as well as possession of Fentanyl for sale and have testified as an expert in possession for sale cases. As a Detective and Task Force Officer, I have investigated cases involving possession of controlled substances and firearms for sale. Through these investigations, I have participated in controlled buys of firearms and controlled substances. I was previously assigned to the Sheriff's Enforcement Team (SET). SET's responsibility and mission is the apprehension of fugitives and confirming the compliance of individuals on supervised release. During my time on SET, I conducted numerous controlled

2

substance and firearms investigations. I have authored and served various search warrants pertaining to controlled substances, firearms, stolen property, etc. I have worked with various bureaus within the Sheriff's Office as well as various federal and state law enforcement agencies involving the investigations of various crimes.

6. Previously, while employed as a Deputy Sheriff, I was assigned to the Solano County Sheriff's Office Patrol Bureau for a total of four years. During this time, I have made hundreds of arrests, conducted and participated in over a thousand criminal investigations relating to, but not limited to, homicides, assaults, domestic violence, burglaries, thefts, sexual assaults, stolen vehicles, possession of controlled substances for sale, firearms possession and missing persons. These investigations consisted of interviewing witnesses, victims, and possible leads; locating and gathering evidence; apprehending criminal suspects and violators of the law; preparing and processing all necessary reports, and testifying as a witness in court. I have spent most of his time assigned to the Sheriff Office's Patrol Bureau as a Field Training Officer, where I was involved in the training of over 10 probationary Deputy Sheriffs. This training included the teaching of criminal law, case law, criminal procedures, traffic enforcement and investigative techniques. On numerous occasions, I was placed in charge of other Deputy Sheriffs as they were engaged in patrol level law enforcement operations.

7. I have participated in discussion and informal training sessions with more experienced controlled substance agents regarding the methods used by controlled substance manufacturers and traffickers, firearms traffickers, and users. I regularly read controlled substance and illegal firearm possession related literature to remain abreast of contemporary topics.  I have spoken with individuals who have admitted possessing controlled substance(s) for sale and /or personal use. These individuals have discussed how controlled substances are packaged when possessed for personal use as well as when they are possessed for sale. These individuals have talked about methods used when transporting controlled substances as well.

8. Prior to becoming a Deputy Sheriff, I graduated from California State University Sacramento in 2012 with a Bachelor's of Science Degree in Criminal Justice. During the course of my studies, I attended and completed courses in relation to criminal investigation of offenses including crimes against persons, crimes against property, narcotics, gangs and firearms related offenses.

3

## II. PROBABLE CAUSE

9. On June 9, 2022, at approximately 0224 hours, Solano County Sheriff Deputy Joseph Elliot was working patrol in the unincorporated area of Vallejo, Solano County. During this time, Deputy Elliot observed a white Mercedes driving eastbound on Lincoln Road E., approaching Benicia Road. The Mercedes was not equipped with a rear or front license plate, a violation of CVC 5200. Deputy Elliot was driving a marked Solano County Sheriff's Office patrol vehicle and in a Sheriff's Office uniform. Deputy Elliot conducted a U-turn to pull behind and catch up to the Mercedes. As Deputy Elliot completed the turn, the Mercedes accelerated westbound onto Benicia Rd. Deputy Elliot activated his forward-facing red light and siren and began to catch up to the Mercedes. The Mercedes continued over the I-80 overpass and as Deputy Elliot caught up, he observed it had stopped in front of the Bev Box liquor store, located at 540 Benicia Rd. As Deputy Elliot pulled up to the liquor store, he observed the driver, later identified as Raykheem GUTHERY, exit the driver seat.

10. Upon initial contact with GUTHERY, Deputy Elliot observed GUTHERY had an unsteady gait. GUTHERY had slow, slurred speech, and displayed objective signs and symptoms of being under the influence of alcohol and or drugs. Based on Deputy Elliot's training and experience, he believed GUTHERY was attempting to distance himself from his vehicle. Deputy Elliot had GUTHERY stand near the rear bumper of his vehicle. GUTHERY stated the vehicle belonged to him and that his "brother" was inside his vehicle. GUTHERY said it was just the two of them inside his vehicle. Deputy Elliot informed GUTHERY that he had stopped him was because he did not have any license plates on his vehicle, to which he replied, "yes, sir, that's why I just pulled over."

11. The passenger, later identified as R.B., exited the passenger seat. R.B. had slow, slurred speech, an unsteady gait, and Deputy Elliot detected an odor of alcohol emitting from his person and breath. R.B. displayed objective signs and symptoms of being under the influence of alcohol and or drugs. Deputy Alyssa Vega arrived on scene and confirmed no other persons were inside the Mercedes. Both GUTHERY and R.B. advised they did not have a license or ID card in their possession.[1] GUTHERY provided a false name to Deputy Elliot and stated his date of birth was "June 19, 1990," and that his first name was "Raymond." Solano Dispatch got a match on this person and advised the male

---

[1] As discussed below, deputies later discovered Guthery's identification card on his person.

4

with the given name and date of birth was unlicensed. This male had the same last name as GUTHERY and the first name was the same first name as one of GUTHERY's aliases, however, this male had a middle name of Samuel. Deputy Elliot believed GUTHERY had given a false name in attempt to make the other male liable for charges, which at the time was a minimum of CVC 12500(a) and CVC 5200(a). By providing this false name, GUTHERY was in violation of PC 529. GUTHERY's true identity was later determined, and it was discovered he was on Post Release Community Supervision (PRCS) with search terms. While standing with GUTHERY and R.B., Deputy Vega observed a large amount of marijuana inside GUTHERY's vehicle. Deputy Vega announced this, at which point GUTHERY stated, "Man, I just told him that, man, I smoke a lot of weed, I smoke pounds of weed, man, a lot of weed." When Deputy Vega asked, "Is that a scale on the floorboard?," GUTHERY responded, "I'm high right now." Based on this statement, Deputy Elliot believed GUTHERY was in violation of 23152(f) CVC- Driving Under the Influence.

   12. Deputy Elliot asked GUTHERY how much marijuana was inside his vehicle and he said, "about two pounds." After Dispatch confirmed GUTHERY did not have a valid license, Deputy Elliot told GUTHERY that he did not have a valid license and that he was not supposed to be driving. Based on the investigation, coupled with GUTHERY's own admittance, Deputy Elliot determined GUTHERY was under the influence of drugs. At this point in the investigation, GUTHERY was in violation of at least CVC 12500 - Driving Unlicensed, CVC 5200 - No License Plates, and CVC 23152(f) - Driving Under the Influence. Deputies placed GUTHERY under arrest based upon the aforementioned crimes. Additionally, based upon the plain view of approximately two pounds of marijuana and GUTHERY's statement of being "high," deputies established probable cause to search GUTHERY for further controlled substances and evidence of driving under the influence. Deputy Elliot asked GUTHERY to turn around and interlace his fingers on the back of his head. GUTHERY refused to comply and stated, "I'm not on probation, I'm not on parole."[2] GUTHERY was placed in handcuffs on scene. GUTHERY had a small bag that was strapped across his body and shoulder that said "Cookies." The bag was positioned on GUTHERY's chest, in a sling style fashion.

---

[2] As discussed below, Deputy Elliot later determined GUTHERY was indeed on probation.

1  //

FIGURE 1: SCREENSHOT OF DEPUTY ELLIOT'S BODY CAMERA FOOTAGE SHOWING GUTHERY IMMEDIATELY PRIOR TO HIS ARREST.  GUTHERY HAD THE FIREARM (PICTURED BELOW) IN THE CIRCLED BAG ON HIS CHEST DURING HIS ENTIRE ENCOUNTER WITH THE POLICE.

13.  Deputy Elliot removed the bag from GUTHERY's person and gave it to Deputy Vega. While handling the bag, Deputy Vega felt what she immediately recognized as the grip of a firearm. The firearm recovered from GUTHERY's bag was a non-serialized Polymer 80 firearm frame[3] with a Glock 27 slide bearing serial number RLN713. The firearm was loaded with a round in the chamber. There was a 22 round high-capacity magazine in the firearm. There were 17 unspent rounds in the magazine and one in the chamber. Deputy Elliot determined the firearm was fully functional.  GUTHERY continued to state he was not on probation or parole, and that he was just trying to "protect himself."

//

//

//

---

[3] Such firearms are colloquially known as "ghost guns."



FIGURE 2: PICTURE OF THE GHOST GUN GUTHERY WAS CARRYING IN HIS CHEST BAG. THE EXTENDED MAGAZINE (22 ROUND CAPACITY) WAS INSERTED, LOADED WITH 17 ROUNDS, AND THE FIREARM HAD AN ADDITIONAL ROUND IN THE CHAMBER.

14. On the front center console of GUTHERY's vehicle, Deputy Elliot observed a marijuana joint rolled in cigar paper. The joint was open and accessible to GUTHERY as he operated his vehicle. In the backseat, Deputy Elliot located two large plastic bags containing a green, leafy substance he determined was marijuana. There was a large black backpack in the backseat that had "Backwoods" on the front. In the backpack, Deputy Elliot located several individually packaged plastic baggies containing marijuana. In the backpack with the marijuana were two scales and two cell phones. In the same backpack, Deputy Elliot located two prescription bottles that contained several stamped pills in various colors. Based on his training and experience, Deputy Elliot believed the pills located were consistent with suspected ecstasy/MDMA. GUTHERY later admitted that the pills were Ecstasy/MDMA. There were a few tabs/strips in a prescription bottle that GUTHERY later admitted (to Deputy Elliot) was LSD. There was a total of 163 Ecstasy/MDMA pills and a total of 25 LSD tabs. Based upon my training and experience, I know that this amount is well beyond what one would

1  possess for personal consumption. A third scale was located on the driver side floorboard.



FIGURE 3: PICTURE OF THE THREE SCALES SEIZED FROM GUTHERY'S PERSON AND VEHICLE.

While searching GUTHERY incident to arrest, Deputy Elliot located a wad of cash in GUTHERY"s left front pants pocket, as well as his California ID card.



FIGURE 4: IDENTIFICATION CARD FOUND ON GUTHERY'S PERSON SHOWING HIS TRUE IDENTITY.

15.     GUTHERY's identity was confirmed revealing he was in fact on PRCS for 245(a)(4) - Assault Causing Great Bodily Injury, with search and seizure at the time of stop. GUTHERY had $602.00 dollars in cash, in different denomination. Based on my training and experience, I know criminals use various forms of packages, as well as scales, to sell marijuana and other controlled substances at different weights and dollar amounts. I also know that it is common for criminals selling controlled substances to possess firearms. GUTHERY admitted he was in possession of approximately

8

two pounds of marijuana, which is well beyond what an average user would possess for personal consumption. Based on the aforementioned information, it was determined GUTHERY was in possession of marijuana with the intent to sell.

16. Deputy Elliot read GUTHERY his Miranda rights from his POST approved card. GUTHERY said he understood his rights and initially stated he did not want to provide a statement. However, GUTHERY began speaking freely. GUTHERY stated the in summary: "That pills and all that shit is mine, it's not my brothers." GUTHERY said "all that shit mine" and belonged to him, and to put the charges on him. The gun found on him was his, which he had for protection. All the marijuana found in his vehicle was for personal consumption only. GUTHERY said "we stoners, we smoke all day every day." Some of the pills on his vehicle were "vitamins" and medicine. GUTHERY said there was some "coke" in his vehicle, which was his. GUTHERY stated, "I'm high on coke right now" and "that's mine too" (referring to a small amount of cocaine which was located on R.B's person). GUTHERY said the cocaine found in R.B.'s pocket was his and that he asked R.B. to hold it. GUTHERY said R.B. was his little brother and that he was only doing what he told him to do. GUTHERY just used cocaine, prior to driving his car to the store that night. GUTHERY said he would be willing to submit to a blood draw. GUTHERY was a convicted felon and was released in 2019 for assault with a deadly weapon. GUTHERY said the various pills found in the bottles were ecstasy. The dark bar-like tabs were "LSD." Deputy Elliot asked GUTHERY if he was under the influence of cocaine right now and GUTHERY responded, "yes." GUTHERY said he started getting high a few hours ago while he was at a party and that he felt the effects of the cocaine as Deputy Elliot spoke to him. GUTHERY was heading back to the party prior to getting stopped.

17. GUTHERY was arrested and booked into the Solano County Jail on various state charges.

**Prohibited Person**

18. A review of GUTHERY's criminal history shows he has been convicted of the following felonies:

- CVC 2800.2 Evading a Police Officer – 10/12/2011
- CVC 2800.2 Evading a Police Officer – 9/9/2014

9

- PC 487(C) - Grand Theft from Person – 9/9/2014
- PC 245(a)(4) – Assault Causing Grave Bodily Injury – 3/9/2016
- PC487(A) – Grand Theft - 12/29/2021
- PC 459 – Burglary – 12/29/2021

**Interstate Nexus**

19. Based on my training, experience, and consultation with an ATF nexus expert, I know that the ammunition in this case, which consists of 18 rounds of ammunition manufactured by the brands Winchester, Blazer, Federal, and Sellier & Bello, is not manufactured in the state of California. Accordingly, this ammunition must have traveled in interstate commerce prior to being possessed on June 9, 2022. in the Eastern District of California.

### III.    IV. CONCLUSION

20. Based on the information set forth in the paragraphs above, I submit that there is probable cause to believe that on or about June 6, 2022, in the Eastern District of California, GUTHERY possessed ammunition, in violation of 18 U.S.C. §§ 922(g)(1).

21. Accordingly, based upon the foregoing, I respectfully request that the Court sign the requested criminal complaint and issue the requested arrest warrant.

22. I further request that the Court order that all papers in support of this application, including the affidavit and this complaint, be sealed until further order of the Court. These documents discuss an ongoing federal criminal investigation that is neither public nor known to GUTHERY. Although GUTHERY is currently in State custody, there is a chance the State might release him before the execution of the requested federal arrest warrant. Premature disclosure might cause GUTHERY to flee and could endanger the safety of the arresting officers. Accordingly, there is good cause to seal these documents until GUTHERY is in federal custody. I further request that the Court authorize the sharing of this complaint with state law enforcement officers and prosecutors for coordination purposes.

//

//

23. I declare under penalty of perjury that the statements above are true and correct to best of my knowledge and belief.

Respectfully submitted,

/s/
Dalton Ryken
FBI Task Force Officer

Subscribed and sworn to me via telephone on:   07/25/22

Hon. Kendall J. Newman
U.S. MAGISTRATE JUDGE

/s/ Adrian T. Kinsella
Approved as to form by AUSA ADRIAN T. KINSELLA

## United States v RAYKHEEM ANDREW GUTHERY
### Penalties for Criminal Complaint

### COUNT 1:

VIOLATION: 18 U.S.C. § 922(g)(1) - Felon in possession of Ammunition

PENALTIES: Not more than 120 months,
Not more than $250,000 fine or both
A three-year term of Supervised Release

SPECIAL ASSESSMENT: $100 (mandatory on each count)