1   PHILLIP A. TALBERT
    United States Attorney
2   ADRIAN T. KINSELLA
    Assistant United States Attorney
3   501 I Street, Suite 10-100
    Sacramento, CA 95814
4   Telephone: (916) 554-2700
    Facsimile:  (916) 554-2900
5

6   Attorneys for Plaintiff
    United States of America
7

8                           IN THE UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,                 CASE NO.  2:22-CR-0173-KJM

12                         Plaintiff,         UNITED STATES' OPPOSITION TO
                                              DEFENDANT'S MOTION TO DISMISS
13                  v.                        INDICTMENT (ECF NO. 31)

14  RAYKHEEM GUTHERY,                         DATE: February 6, 2023
                                              TIME: 9:00 a.m.
15                         Defendant.         COURT: Hon. Kimberly J. Mueller

16

17                  I.      **INTRODUCTION**

18          The United States opposes defendant Raykheem Guthery's Motion to Dismiss Indictment (ECF

19  No. 31) on the basis that the indictment presents cognizable offenses and Guthery's central contention—

20  that the statute under which he is charged, 18 U.S.C. § 922(g), violates his Second Amendment rights—

21  remains incorrect as a matter of law. The Supreme Court's recent holding in *New York State Rifle &*

22  *Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 (2022) made clear that its opinion did not disturb

23  existing precedent restricting felons from possessing firearms.  Defendant's Motion (Mot.) at 1.  Neither

24  Guthery's lifetime ammunition (and firearm) ban as a convicted felon, nor his temporary ban pursuant to

25  a domestic violence court order, run afoul of the Second Amendment.  As the defendant acknowledges,

26  the Ninth Circuit decided this question most recently in *United States v. Phillips*, 827 F.3d 1171 (9th Cir.

27  2016), finding precisely the opposite.  The Supreme Court's ruling in *Bruen* leaves *Phillips* undisturbed.

28          The indictment alleges facts to support each element of the charges that Guthery violated: 18

    UNITED STATES' OPPOSITION TO DEFENDANT'S            1
    SECOND MOTION TO DISMISS INDICTMENT

1  U.S.C. §§  922(g)(1) (Count One) and § 922(g)(8) (Count Two).  Guthery has presented no argument to

2  suggest that the indictment is legally or factually defective under Ninth Circuit precedent or recent

3  Supreme Court precedent.

## II.      LEGAL STANDARD

5      Federal Rule of Criminal Procedure 12(b)(3)(B)(v), allows a defendant to move to dismiss an

6  indictment on the ground that the indictment "fail[s] to state an offense."  To determine whether an

7  indictment supports an offense, however, a court takes the allegations in the indictment as true and

8  "analyz[es] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914

9  (9th Cir. 2002).  "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense,

10  the district court is bound by the four corners of the indictment." *Id*.  If a motion to dismiss an indictment

11  involves questions of law, rather than fact, a court may determine that motion before trial.  *United States*

12  *v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986), cert. denied, 478 U.S. 1007 (1986).

## III.      ARGUMENT

### A.      The indictment alleges cognizable offenses under 18 U.S.C. § 922(g)(1) & § 922(g)(8).

15      The indictment in this case alleges the factual predicates for each element required to establish a

16  count for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and a second

17  count for being a prohibited person in possession of ammunition, in violation of 18 U.S.C. § 922(g)(8),

18  and is therefore sufficient to withstand the defendant's motion to dismiss.

19      Specifically, as to Count One, the indictment states (1) that on June 9, 2022, Guthery knowingly

20  possessed 18 rounds of .40 caliber ammunition loaded inside a privately manufactured firearm, (2) that

21  the ammunition had moved in or affected interstate commerce, and (3) that at the time he possessed the

22  ammunition, Guthery knew he had been convicted of a crime punishable by more than a year in prison.

23  ECF No. 10.  The indictment lists three separate felony convictions in Guthery's criminal history.

24      As to Count Two, the indictment states (1) that on June 9, 2022, Guthery knowingly possessed the

25  same ammunition described above, (2) that the ammunition had moved in or affected interstate

26  commerce, (3) that at the time he possessed said ammunition, he was subject to a court order issued after

27  a hearing of which he received actual notice, and at which he had an opportunity to participate, (4) that

28  the order restrained him from harassing, stalking, or threatening an intimate partner, and (5) that the

1  order, by its terms, explicitly prohibited the use, attempted use, or threatened use of physical force

2  against such intimate partner that would reasonably be expected to cause bodily injury.

3        Taking as true the language in the indictment, the facts are sufficient to support the cognizable

4  offenses of being a felon in possession of ammunition and a prohibited person in possession of

5  ammunition.  *Boren*, 278 F.3d at 914.

6        **B.**      **The Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen***

7            **does not conflict with Ninth Circuit precedent regarding prohibited persons in**

8            **possession charges.**

9        The Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct.

10  2111, 2138 (2022)) explicitly left undisturbed its holding in *District of Columbia v. Heller* that felon in

11  possession laws are presumptively lawful.  The litany of Ninth Circuit precedent based on *Heller* remains

12  good law.

13        Courts are directed to follow Ninth Circuit precedent unless it is "effectively overruled" when

14  "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory

15  of intervening higher authority."  *Miller v. Gammie*, 335 F.3d 889, 890, 893 (9th Cir. 2003) (en banc).

16  "The clearly irreconcilable requirement is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073

17  (9th Cir. 2018) (quotation omitted).  "[I]t is not enough for there to be some tension between the

18  intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast

19  doubt on the prior circuit precedent." *Id*. (quotation omitted).  *Bruen* has cast no such doubt on *Heller*, or

20  its Ninth Circuit progeny, and Guthery's violations of § 922(g) charged in the indictment remain

21  cognizable offenses.

22          1.      **Section 922(g)(1) Is Constitutional After *Bruen***

23        In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment right to

24  "keep and bear arms" encompassed an individual right to have a firearm in the home for lawful self-

25  defense.  554 U.S. 570, 595, 635 (2008).  The Court added a caveat, however, instructing the lower

26  courts that its holding did not "cast doubt on longstanding prohibitions on the possession of firearms by

27  felons and the mentally ill...[,]" *id*. at 626–27, adding "[w]e identify these presumptively lawful

28  regulatory measures only as examples; our list does not purport to be exhaustive." *Id*. at 627 n. 26. The

1    Court affirmed this position in *McDonald v. Chicago,* 561 U.S. 742, 786 (2010): "We made it clear in

2    *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on

3    the possession of firearms by felons and the mentally ill..." (quoting *Heller*, 554 U.S. at 626).

4         Relying on *Heller*, the Ninth Circuit has held repeatedly that § 922(g)(1) does not violate the

5    Second Amendment because "felons are categorically different from the individuals who have a

6    fundamental right to bear arms." *United States* v. *Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010); *United*

7    *States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016) (stating that, "under Supreme Court precedent and

8    our own," the court "must" "assum[e] the propriety of felon firearm bans"); *Van Der Hule v. Holder*, 759

9    F.3d 1043, 1050–51 (9th Cir. 2014) (relying on *Vongxay* to again uphold § 922(g)(1) as constitutional);

10   *United States v. Chovan*, 735 F.3d 1127, 1144–45 (9th Cir. 2013) (Bea, J., concurring) ("The Court in

11   *Heller* seemed to equate the status of a felon or one mentally ill with a presumptive disqualification from

12   the Second Amendment right.").

13        In *Bruen*, the majority opinion stated without qualification that its holding was "in keeping with

14   *Heller*." *Bruen*, 142 S. Ct. at 2126.  Throughout, the Court repeatedly described the Second

15   Amendment's granting of the right to "keep and bear arms" as limited to "law abiding" citizens. 142 S.

16   Ct. at 2122, 2131, 2133, 2134, 2138, 2150, 2156.  Between two concurrences and one dissent, six justices

17   made clear that *Bruen* in no way eroded *Heller*'s treatment of laws restricting the right of felons to own

18   firearms.  *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (*Bruen* does not

19   disturb the Court's discussion in *Heller* about the "longstanding prohibitions on the possession of

20   firearms by felons...."); 2157 ("Nor have we disturbed anything that we said in *Heller* or McDonald.")

21   (Alito, J., concurring); 2189 (*Bruen* "cast[s] no doubt on" *Heller*'s treatment of laws prohibiting firearms

22   possession by felons.) (Breyer, J., joined by Kagan, J., and Sotomayor, J., dissenting). [1]

23   

24      [1] This Court has recognized this consensus in a recent civil case construing California law.
     *Pervez v. Becerra*, No. 2:18-CV-02793-KJM-KJN, 2022 WL 2306962, at *2, n. 2 (E.D. Cal. June 27,
25   2022) ("The court has reviewed the Supreme Court's recent decision [*Bruen,*142 S. Ct. at 2138]. The
     court finds the decision does not affect the application of California law here, given that '[n]othing in
26   [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of
     firearms by felons and the mentally ill...'" *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *District of*
27   *Columbia v. Heller*, 554 U.S. 570, 626-27 & n. 26, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)
     and *McDonald v. Chicago*, 561 U.S. 786 (2010)).").

28   

UNITED STATES' OPPOSITION TO DEFENDANT'S
SECOND MOTION TO DISMISS INDICTMENT

1    In his motion to dismiss, Guthery invites this Court to commit error by arguing—erroneously—

2    that it is no longer bound by the Ninth Circuit's holding in *Phillips*, 827 F.3d 1171 (9th Cir. 2016).  Mot.

3    at 3.  Defendant argues that the historical test set forth in *Bruen* is inconsistent with *Phillips*, but this is

4    not the case, and ignores the litany of Ninth Circuit precedent upholding the constitutionality of

5    § 922(g)(1).  In *Bruen*, the Court stated a two-step framework "to assess whether modern firearms

6    regulations are consistent with the Second Amendment's text and historical understanding." 142 S. Ct. at

7    2131.  The first prong examines the text: "When the Second Amendment's plain text covers an

8    individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129-30.[2]  The second

9    prong looks to history: "The government must then justify its regulation by demonstrating that it is

10   consistent with the Nation's historical tradition of firearm regulation."  *Id*.  In fact, prior to—but

11   consistent with—this important second prong, the Ninth Circuit in *Vongxay* (on which *Phillips* relied)

12   stated that "[o]ur examination ... of historical gun restrictions ... lends credence to the post-*Heller*

13   viability" of the court's pre-*Heller* holding that 18 U.S.C. § 922(g)(1) does not violate the constitution.

14   *Vongxay*, 594 F.3d at 1116.  The *Vongxay* court stated that, although "the historical question has not been

15   definitively resolved," "most scholars of the Second Amendment agree that the right to bear arms was

16   'inextricably ... tied to' the concept of a 'virtuous citizen[ry]' that would protect society through

17   'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the

18   right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)....'"  *Id*. at

19   1118 (quoting *Don B. Kates, Jr., The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143,

20   146 (1986)) (citations omitted); *see also id.* at 1117 (stating that "[f]elons are often, and historically have

21   been, explicitly prohibited from militia duty") (citation omitted).

### 2.    Section 922(g)(8) Is Constitutional After *Bruen*

23   Despite asking this Court to dismiss the entire indictment, the defendant makes no argument as to

24   the constitutionality of § 922(g)(8) specifically.  Instead, his motion only focuses on § 922(g)(1).

25   Nevertheless, out of an abundance of caution, the United States also explains herein why, the conduct

26

27        [2] For the sake of argument, Guthery's conduct at issue here—simply possessing the firearm and
ammunition—appears to be covered by the Second Amendment, so the analysis moves to the second
28   prong.

UNITED STATES' OPPOSITION TO DEFENDANT'S                    5
SECOND MOTION TO DISMISS INDICTMENT

1   burdened by § 922(g)(8) also does not fall within the scope of the Second Amendment right, which

2   protects only the right of law-abiding, responsible citizens to possess firearms for self-defense.  Persons

3   subject to domestic violence restraining orders that satisfy § 922(g)(8) are not law-abiding, responsible

4   citizens who fall within the Second Amendment's protection under *Heller* and *Bruen*. Section 922(g)(8)

5   applies only to those who have been judicially determined, "after a hearing" and "actual notice," to

6   present a "credible threat" or "real threat" to the physical safety of another person. § 922(g)(8)(A), (C)(i).

7   In most circumstances, such a person is not a "law-abiding" citizen because the conduct that led to the

8   protective order constitutes an assault, battery, or criminal threat. And such a person can hardly be termed

9   "responsible."

10          That is certainly the case here, where Guthery, as a result of the same conduct[3] that led to his

11   2021 misdemeanor conviction for spousal battery, in violation of California Penal Code 243(e)(1), was

12   subject to a court order explicitly prohibiting him from using force against a domestic partner. Thus, even

13   viewing Guthery through the lens of the § 922(g)(8) charge only,  he is not a "law abiding, responsible

14   citizen" whose firearm or ammunition possession is protected by the Second Amendment.

15          Moreover, even if § 922(g)(8) burdens some protected conduct, that burden is consistent with the

16   historical tradition. There is a long tradition both in England and the United States of prohibiting firearm

17   possession by those who pose a threat to the community or to others' safety. Section 922(g)(8) is

18   analogous to those laws both in the burden it imposes and the reasons for the burden.  In England,

19   officers of the Crown could "seize all arms in the custody or possession of any person" whom they

20   "judge[d] dangerous to the Peace of the Kingdom.'" Militia Act of 1662, 13 & 14 Car. 2, c.3, § 13

21   (1662). And "the act of 'going armed to terrify the King's subjects' was 'a great offence at the common

22   law,'" so long as it was committed with "evil intent or malice." *Bruen*, 142 S. Ct. at 2141 (brackets and

23   emphasis omitted) (quoting *Sir John Knight's Case*, 87 Eng. Rep. 75, 76 (K.B. 1686)). Thus, "by the time

24   of American independence, England had established a well-practiced tradition of disarming dangerous

25   persons—violent persons and disaffected persons perceived as threatening to the crown." Joseph G.S.

26

27          [3] As documented by a police report already provided to the defendant in discovery at
      GUTHERY_00000057, this conduct included striking the victim (who then believed she was pregnant)
28   in the face with his closed fists, throwing a plate at her face, and striking her again while he fled.

1   Greenlee, The Historical Justification for Prohibiting Dangerous Persons from Possessing Firearms, 20

2   Wyo. L. Rev. 249, 261 (2020); *see id*. at 259-61 (detailing history).

3          Similarly in America, the colonies (and later the states) enacted statutes that "prohibit[ed] bearing

4   arms in a way that spreads 'fear' or 'terror' among the people." *Bruen*, 142 S. Ct. at 2145. As *Bruen*

5   observed, such statutes "all but codified the existing common law in this regard." *Id*. at 2144 n.14 (citing

6   George Webb, The Office and Authority of a Justice of Peace 92 (1736)). Before the ratification of the

7   Second Amendment in 1791, at least four colonies or states had codified the common-law prohibition on

8   going armed offensively in a threatening manner and authorized the arrest of those who did so. See Acts

9   and Resolves, Public and Private, of the Province of the Massachusetts Bay, 52-53 (1869) (1692 statute);

10  Acts and Laws of His Majesty's Province of New-Hampshire: In New-England; with Sundry Acts of

11  Parliament 17 (1771) (1701 statute); Laws of the State of North-Carolina, including the Titles of Such

12  Statutes and Parts of Statutes of Great Britain as Are in Force in Said State 131-32 (1821) (1741 statute);

13  Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as

14  Are Now in Force 33 (1794) (1786 statute). Three of these statutes—those from Massachusetts Bay, New

15  Hampshire, and Virginia—required forfeiture of the offender's weapons.

16         Section 922(g)(8) is also analogous to historical surety laws. Those laws allowed a person to

17  obtain a "surety of the peace" when another person posed a threat to his or her safety. And the person

18  against whom the surety was obtained could forfeit his weapons and be imprisoned if he failed to provide

19  adequate assurances—either in the form of money or guarantees from others—that he would keep the

20  peace. Both section 922(g)(8) and the state protective-order statutes are analogous to laws that predated

21  the Second Amendment. Like § 922(g)(8), those historical laws did not depend on the existence of a

22  criminal conviction. And any concern about the duration of protective orders can be addressed by

23  challenging the underlying order. Section 922(g)(8)'s prohibition is consistent with the longstanding and

24  historical prohibition on the possession of firearms by felons. *See Heller*, 554 U.S. at 626.

25         In contrast, the tangential issue that Guthery raises in his motion, from *Phillips*, is whether a

26  conviction of misprision of a felony (18 U.S.C. § 4) is a sufficient basis, historically, to deprive an

27  individual of his right to possess a firearm.  Mot. at 3.  The court in *Phillips* determined ultimately that it

28  was.  *Phillips*, 827 F.3d at 1175.  The defendant in *Phillips* had argued that misprision of felony was a

UNITED STATES' OPPOSITION TO DEFENDANT'S                    7
SECOND MOTION TO DISMISS INDICTMENT

1   non-violent, "passive crime of inaction," and that permitting it to serve as a predicate for his § 922(g)(1)

2   conviction violated the Second Amendment.  *Id.* at 1174-75.  The Ninth Circuit disagreed with the

3   "passive" characterization: "[T]he crime of misprision of felony has long been interpreted to contain

4   some element of active concealment, though a mere lie might be sufficient."  *Id*. (citations omitted).

5   More importantly, however the Ninth Circuit found that a violation of 18 U.S.C. § 4 was, by clear

6   congressional intent, a federal felony and therefore a proper predicate for a charge of violating 18 U.S.C.

7   § 922(g)(1).  *Id*. at 1175.  The Ninth Circuit offered that "there may be some good reasons to be skeptical

8   about the current framework of analyzing the Second Amendment rights of felons," but ultimately held

9   that, in light of *Heller* and *Vongxay*, those issues did not affect its finding that § 922(g)(1) was

10  constitutional.  *Id.* at 1176.[4]

11      The reasoning of *Heller*, as relied on by *Vongxay* and, in turn, *Phillips*, is not then "clearly

12  irreconcilable with the reasoning or theory" of *Bruen*.  Miller, 335 F.3d at 893.  As a result, *Bruen* has not

13  "effectively overruled" *Vongxay*, *Phillips*, or their progeny, which remain binding precedent within this

14  circuit.  The § 922(g) charges in Guthery's indictment remain a cognizable offenses.[5]

15

16  [4] At least two other circuits have found—both pre- and post-*Bruen*—that removing the gun-possession rights of individuals convicted even for non-violent felonies is consistent with the history and tradition of firearm regulation in this country.  *Medina v. Whitaker*, 913 F.3d 152, 158-60 (D.C. Cir. 2019) ("[T]he historical evidence and the Supreme Court's discussion of felon disarmament laws leads us to reject the argument that non-dangerous felons have a right to bear arms."); *Range v. Garland*, No. 21-2835 (3d Cir. Nov. 16, 2022) ("We have conducted a historical review as required by *Bruen* and we conclude that [the defendant], by illicitly taking welfare money through fraudulent misrepresentation of his income, has demonstrated a rejection of the interests of the state and of the community…. As such, his disarmament under 18 U.S.C. § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulation.)

21  [5] One court of appeals decision has considered and rejected a post-*Bruen* challenge to the constitutionality of Section 922(g)(1), although that disposition is presently under review by the en banc court. See Range v. Att'y Gen., 53 F.4th 262 (3d Cir. 2022), reh'g en banc granted, opinion vacated, 2023 WL 118469 (3d Cir. Jan. 6, 2023). At least 70 district-court decisions have done the same. *See United States v. Coleman*, No. 3:22-cr-8, Dkt. No. 117 (N.D. W.Va. Jan. 6, 2023); *United States v. Medrano*, No. 3:21-cr-39, Dkt. No. 65 (N.D. W.Va. Jan. 6, 2023); *United States v. Olson*, No. 1:22-cr-20525, Dkt. No. 33 (S.D. Fla. Jan. 5, 2023); *United States v. Jones*, No. 5:22-cr-376, Dkt. No. 59 (W.D. Okla. Dec. 23, 2022); *United States v. Goins*, No. 5:22-cr-91, Dkt. No. 32 (E.D. Ky. Dec. 21, 2022); *United States v. Mugavero*, No. 3:22-cr-1716, Dkt. No. 29 (S.D. Cal. Dec. 19, 2022); *United States v. Dotson*, No. 3:22-cr-1502, Dkt. No. 26 (S.D. Cal. Dec. 12, 2022); *United States v. Tran*, No. 3:22-cr-331, Dkt. No. 63 (S.D. Cal. Dec. 12, 2022); *United States v. Fencl*, No. 3:21-cr-3101, Dkt. No. 81 (S.D. Cal. Dec. 7, 2022); *United States v. Perez-Garcia*, No. 3:22-cr-1581, Dkt. No. 70 (S.D. Cal. Dec. 6, 2022); *United States v. Walker*, No. 2:19-cr-234, Dkt. No. 83 (E.D. Cal. Dec. 6, 2022); *United States v. Grinage*, No. 5:21-cr-399, Dkt. No. 51, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Wagoner*, No. 4:20-cr-18, Dkt. No. 262, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Gay*, No. 4:20-cr-40026, Dkt. No. 412 (C.D. Ill. Dec. 5, 2022); *United States v. Glaze*, No.

UNITED STATES' OPPOSITION TO DEFENDANT'S        8
SECOND MOTION TO DISMISS INDICTMENT

1

2  5:22-cr-425, Dkt. No. 23 (W.D. Okla. Dec. 1, 2022); *United States v. Ford*, No. 4:21-cr-179, Dkt. No. 52, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022); *United States v. Jones*, No. 4:20-cr-354, Dkt. No.

3  78, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022); *United States v. Jacobs*, No. 2:22-cr-160, Dkt. No. 28 (C.D. Cal. Nov. 28, 2022); *United States v. Cage*, No. 3:21-cr-68, Dkt. No. 41, 2022 WL 17254319

4  (S.D. Miss. Nov. 28, 2022); *United States v. Willis*, No. 1:22-cr-186, Dkt. No. 36 (D. Colo. Nov. 23, 2022); *United States v. Teerlink*, No. 2:22-cr-24, Dkt. No. 33, 2022 WL 17093425 (D. Utah Nov. 21,

5  2022); *United States v. Nixon*, No. 3:22-cr-149 (S.D. Cal. Nov. 18, 2022); *United States v. Hill*, No. 4:22-cr-249, Dkt. No. 42 (S.D. Tex. Nov. 17, 2022); *United States v. Blackburn*, No. 1:22-cr-209, Dkt.

6  No. 28 (M.D. Pa. Nov. 17, 2022); *United States v. Mitchell*, No. 1:22-cr-111, Dkt. No. 43 (S.D. Ala. Nov. 17, 2022); *United States v. Dumont*, No. 1:22-cr-53 (D.N.H. Nov. 14, 2022); *United States v.*

7  *Baker*, No. 2:20-cr-301, Dkt. No. 179, 2022 WL 16855423 (D. Utah Nov. 10, 2022); *United States v. Carpenter*, No. 1:21-cr-86, Dkt. No. 38, 2022 WL 16855533 (D. Utah Nov. 10, 2022); *United States v.*

8  *Moore*, No. 2:21-cr-121, Dkt. No. 81 (W.D. Pa. Nov. 9, 2022); *United States v. Reese*, No. 2:19-cr-257, Dkt. No. 193 (W.D. Pa. Nov. 8, 2022); *United States v. Young*, No. 2:22-cr-54, Dkt. No. 47 (W.D. Pa.

9  Nov. 7, 2022); *United States v. Butts*, No. 9:22-cr-33, Dkt. No. 33 (D. Mont. Oct. 31, 2022); *United States v. Burton*, No. 3:22-cr-362, Dkt. No. 48 (D. S.C. Oct. 28, 2022); *United States v. Carleson*, No.

10  3:22-cr-32, Dkt. No. 39 (D. Ak. Oct. 28, 2022); *United States v. Grant*, No. 3:22-cr-161, Dkt. No. 44, 2022 WL 16541138 (D. S.C. Oct. 28, 2022); *United States v. Law*, No. 2:20-cr-341, Dkt. No. 60 (W.D.

11  Pa. Oct. 27, 2022); *United States v. Borne*, No. 1:22-cr-83, Dkt. No. 35 (D. Wyo. Oct. 24, 2022); *United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022); *United States v. Raheem*, No.

12  3:20-cr-61, Dkt. No. 389, 2022 WL 10177684 (W.D. Ky. Oct. 17, 2022); *United States v. Ridgeway*, No. 3:22-cr-175, Dkt. No. 32, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022); *United States v. Trinidad*, No.

13  3:21-cr-398, Dkt. No. 99, 2022 WL 10067519 (D.P.R. Oct. 17, 2022); *United States v. Carrero*, No. 2:22-cr-30, Dkt. No. 50, 2022 WL 9348792 (D. Utah Oct. 14, 2022); *United States v. Kimura*, No. 3:21-

14  cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022); *United States v. Riley*, No. 1:22-cr-163, Dkt. No. 37, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022); *United States v. King*, No. 7:21-cr-255, Dkt. No. 50, 2022

15  WL 5240928 (S.D.N.Y. Oct. 6, 2022); *United States v. Daniels*, No. 1:03-cr-83, Dkt. No. 69, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022); *United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL

16  4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Williams,* No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022); *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27,

17  2022); *United States v. Siddoway*, No. 1:21-cr-205, Dkt. No. 54, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Perez*, No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022); *United States v.*

18  *Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Delpriore*, No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022); *United States v. Coombes*, No. 4:22-

19  cr-189, Dkt. No. 39, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022); *United States v. Hill*, No. 3:21-cr-107, Dkt. No. 70, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022); *United States v. Rojo*, No. 3:21-cr-682,

20  Dkt. No. 50 (S.D. Cal. Sept. 14, 2022); *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, No. 0:21-cr-51, Dkt. No. 114, 2022 WL 4226229 (D.

21  Minn. Sept. 13, 2022); *United States v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022); *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022); *United States v. Doty*, No.

22  5:21-cr-21, Dkt. No. 34 (N.D. W.Va. Sept. 9, 2022); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Randle*, No. 3:22-cr-20, Dkt. No.

23  34 (S.D. Miss. Sept. 6, 2022); *United States v. Ingram*, No. 0:18-cr-557, Dkt. No. 1714, 2022 WL 3691350 (D. S.C. Aug. 25, 2022); *United States v. Nevens*, No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal.

24  Aug. 15, 2022); *United States v. Farris*, No. 1:22-cr-149, Dkt. No. 29 (D. Colo. Aug. 12, 2022); *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022); *United States v. Ramos*, No. 2:21-cr-395,

25  Dkt. No. 31 (C.D. Cal. Aug. 5, 2022); *United States v. Doss*, No. 4:21-cr-74, Dkt. No. 126 (S.D. Iowa Aug. 2, 2022); *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022). As of the time of

26  filing, the United States is not aware of any court to have ruled in favor of such a challenge.

27    As to Section 922(g)(8), at least two courts have considered and rejected post-*Bruen* challenges to the statute. *United States v. Jordan*, No. 5:22-cr-339, Dkt. No. 29 (W.D. Okla., Oct. 25, 2022); *United*

28  *States v. Kays*, No. 5:22-cr-40, Dkt. No. 86, 2022 WL 3582504 (W.D. Okla. Aug. 29, 2022). At least one court has considered and granted a post-*Bruen* challenge to the statute.  *United States v. Perez-*

UNITED STATES' OPPOSITION TO DEFENDANT'S
SECOND MOTION TO DISMISS INDICTMENT

3.      **Ammunition and the Second Amendment**

Finally, without any precedent, elaboration, or substantive analysis, Guthery argues that

prohibitions against the possession of ammunition "should be analyzed differently under *Bruen*."  Mot. at

4.  In 2014,  in an opinion that discussed the constitutionality of two California regulations pertaining to

the storage of firearms and restrictions on the sale of hollow point ammunition, the Ninth Circuit

recognized an obvious truth:

> The Second Amendment "protects "arms," "weapons," and "firearms"; it does not
> explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would
> be meaningless … we conclude that prohibitions on the sale of ammunition do not fall
> outside "the historical understanding of the scope of the [Second Amendment] right."

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014).  The Ninth Circuit went on to

note that "it would make little sense if regulations on gunpowder and ammunition fell outside the

historical scope of the Second Amendment." *Id*.   Even assuming, post-*Bruen*, that a right to

possess ammunition deserves equal protection under the Second Amendment as the right for law-

abiding citizens to possess firearms themselves, the charges in the Indictment are still

constitutional for the same reasons discussed above.

## IV.      CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the

defendant's Second Motion to Dismiss Indictment.

Dated:  January 23, 2023

PHILLIP A. TALBERT
United States Attorney

By:  /s/ ADRIAN T. KINSELLA
ADRIAN T. KINSELLA
Assistant United States Attorney

---

*Gallan*, No. 4:22-cr-427, Dkt. No. 55, (W.D. Tex. Nov. 11, 2022).

UNITED STATES' OPPOSITION TO DEFENDANT'S
SECOND MOTION TO DISMISS INDICTMENT

10